UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY MORRISON,

    Plaintiff,

v.

Case No. 15-13344
Hon. Terrence G. Berg

LAURIE R. MILLER AND GEORGE K. MILLER, individually, and d/b/a PINE HILL STABLES,

    Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS (DKT. 19)**

**I. INTRODUCTION**

This is a declaratory judgment and § 1983 case brought against Defendants—private citizens—on the theory that their filing of a civil lawsuit against Plaintiff in New York state court constituted an abuse of process and deprived Plaintiff of her due process rights under the New York Constitution. Defendants move to dismiss this case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons below, Defendant's motion is **GRANTED**.

**II. FACTUAL AND PROCEDURAL HISTORY**

This case begins in California, where Plaintiff Mary Morrison and two others went in together on the purchase of race horses. Dkt 1, ¶ 14. Eventually, Plaintiff moved from California to Missouri and disclaimed all interest in the horses, leaving their care to the others. Dkt. 1, ¶¶ 11, 15-17, 31-32. Plaintiff's former partners hired Defendants, who were located in New York, to board the horses. Dkt. 1, ¶¶ 2-3, 15.

A dispute arose over the horse boarding, and Defendants foreclosed on the horses and sold them at a lien sale. *Id*. Defendants then filed a lawsuit in New York state court against all three original owners, alleging breach of contract. Dkt. 1, ¶ 7.

Plaintiff, acting as a defendant in the New York case, challenged the New York court's personal jurisdiction over her. Dkt. 1, ¶ 20. The outcome of that challenge, however, is anything but clear. In her opposition brief, Plaintiff stated that the New York court had dismissed her from the case. But at oral argument, Plaintiff stated that it was her "position" that the New York court dismissed her from the case. And Defendant maintains that the case is still ongoing as to Plaintiff. Despite the significance of this factual point, neither party has provided any evidence of the New York case's status. At oral argument, Plaintiff claimed that she filed with her challenge to personal jurisdiction a proposed order dismissing her from the case, that the New York court entered that order, but that the court then entered another order suggesting that the previously-entered order was mistakenly entered. Plaintiff continues to maintain that she was dismissed from the case and that the later docket entry did nothing to change her dismissal.

In any event, Plaintiff filed this federal complaint against Laurie and George Miller and Pine Stables d/b/a (New York residents and the plaintiffs in the New York case), arguing that the New York lawsuit violates her rights. Dkt. 1. Plaintiff asserts three causes of action: (1) Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202;

(2) Violation of Due Process under 42 U.S.C. § 1983; and (3) Abuse of Process also under §1983.[1] Dkt. 1, ¶¶ 43-62.

Defendants have moved to dismiss this lawsuit on three grounds. Dkt. 19. First, Defendants argue that this lawsuit is barred by the *Rooker-Feldman* doctrine. Dkt. 19, Pg. IDs 71-76. Second, Defendants argue that res judicata, collateral estoppel, and another legal maxim Defendants' counsel calls "bar" all prevent Plaintiff from bringing the case. Dkt. 19, Pg. IDs 76-81. And third, Defendants argue that the statute of limitations has run on the abuse of process claim. Dkt. 19, Pg. ID 76. Plaintiff opposes the motion. Dkt. 21.

### III. ANALYSIS

As an initial matter, the Court finds that the grounds Defendants assert for dismissal lack merit. The *Rooker-Feldman* doctrine does not apply when the federal lawsuit is filed before the state court lawsuit ends. *See Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 449 (E.D. Mich. 2006). Res judicata and collateral estoppel do not apply because, as far as the parties have shown, there is no judgment against Plaintiff in the New York case and no determination on any issue present in both cases. And "bar" is inapplicable because it is not an independent legal maxim. Finally, Defendants have not shown that the three-year statute of limitations has run for the abuse-of-process claim. Defendants do not identify when the period began to run, and do not contest Plaintiff's argument that the period began running when she was

---

[1] Plaintiff's complaint does not identify § 1983 as the basis for her abuse-of-process claim, but at oral argument Plaintiff clarified that that was the basis for the claim.

purportedly dismissed from the New York case, which was less than three years before she filed this lawsuit. But because the Court declines to exercise jurisdiction over Plaintiff's declaratory judgment claim, and because the Court finds that, under the *Younger* Abstention Doctrine, adjudicating this case would require ruling on important aspects of New York law properly left to the New York state courts, the case warrants dismissal.

### A. Discretion to Hear Declaratory Judgment Actions

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Thus "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.* at 288. In determining whether to hear a declaratory judgment action, a district court considers five factors:

1. whether the judgment would settle the controversy;
2. whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
3. whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
4. whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
5. whether there is an alternative remedy that is better or more effective.

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 F. App'x 433, 437–38 (6th Cir. 2001).

A district court may also consider additional factors, such as whether the underlying factual issues are important to an informed resolution of the case; whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

Here, Plaintiff seeks a declaration of her rights, and requests specifically that the Court declare:

- The New York long-arm statute and the constitutional limits of due process prevent the New York lawsuit against her;
- The prosecution of the New York lawsuit against her is an abuse of process;
- The sale of the horses without going through the New York courts violated her due process rights;
- The service of process of the New York lawsuit on her was void; and
- Any judgment against her entered in the New York lawsuit is void.

Dkt. 1, ¶ 21. The Court will not do so, because all of the above-listed factors weigh against issuing a declaratory judgment.

Starting with the five factors outlined in *Zide*: first, declaratory judgments issued from this Court would not settle the controversy in New York. "[A] federal court's interpretation of state law is not binding." *Appalachian Railcar Servs., Inc. v. Boatright Enterprises, Inc.*, 602 F. Supp. 2d 829, 847 (W.D. Mich. 2008) (*citing Leavitt v. Jane L.*, 518 U.S. 137, 146, (1996) (Stevens, J., dissenting)). Whatever this Court might say about New York law would have no impact—other than being persuasive

authority—on how the New York court proceeds with its case. The New York court could still move forward and render any judgment it deemed appropriate.

Second, for the same reason, the declaratory judgments Plaintiff seeks would serve no useful purpose in clarifying the legal relations at issue. If anything, the judgments Plaintiff seeks might further confuse the legal relations—this Court could say one thing and the New York court could say the opposite, leading to inconsistent results.

Third, to have the desired effect, the declaratory remedy would need to turn this Court into a fast track to res judicata. Plaintiff is seeking to use this Court to prevent the possibility of an unfavorable outcome in the New York court. A declaratory judgment would not accomplish this end, and this Court could not enjoin the New York lawsuit (see 28 U.S.C. § 2283), so the only way for Plaintiff to succeed would be to gain a quick decision in her favor, get her judgments, and race back to New York to argue res judicata.

Fourth, the declarations Plaintiff seeks wouldn't just increase the friction between federal and state courts, they would risk creating a direct conflict. Plaintiff here asks this Court to interpret no less than three New York statutes (the long-arm statute, the foreclosure statute, and the service statute)—two of which concern how New York administers its judicial system—and the New York Constitution's due process clause. Indeed, Plaintiff asks this Court to make those interpretations while the New York court is in the midst of addressing these questions as it handles the New York lawsuit. The Court declines to interject itself into an ongoing state-court matter.

Fifth, there is an alternative remedy that would be more effective: Plaintiff can address her concerns in the New York lawsuit. The same desired outcomes Plaintiff seeks from any declaratory judgment may be achieved by successfully litigating the New York case. Plaintiff may seek to be dismissed from the New York state proceeding on the basis of lack of personal jurisdiction, improper service, improper lien sale, and abuse of process.

Additionally, the three factors enunciated in *Scottsdale* further support refusing to hear Plaintiff's claim. The underlying factual issues are important to an informed resolution of this case. Plaintiff's claim involves whether she has ties to New York, what happened in a lien sale of a horse, and how Defendants (acting as Plaintiffs in the New York case) served her the complaint. Without the parties developing these facts, neither this Court nor a jury could render an informed opinion or verdict in this case.

And the New York trial court is in a better position to evaluate these facts. To be sure, neither court is in a better position to determine whether Plaintiff has ties to New York and how Defendants served her the complaint in that case; her ties can be proven or disproven with documents, and she was allegedly in Missouri when served (which is equally difficult for a state court in New York and a federal court in Michigan to evaluate). But the lien sale occurred in New York, not Michigan, so the New York court is better able to evaluate those facts because the relevant witnesses are there.

Finally, there is a close nexus between the underlying issues and state law. Indeed, Plaintiff asks this Court to wade into New York state law to determine (1) the reach of New York's long-arm statute; (2) whether the lien sale violated her due process rights under the New York Constitution; and (3) whether service was proper. The nexus could not be closer.

In short, because all of the factors weigh against exercising jurisdiction over Plaintiff's declaratory judgment claim, the Court declines to do so. Count I is **DISMISSED**.

### B. *Younger* Abstention

"[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger v. Harris*, 401 U.S. 37, 45 (1971). With those words the *Younger* Abstention Doctrine came into being. The Doctrine has twin purposes. First, it restrains courts' equity jurisdiction to "prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id.* at 44. Second, it promotes comity between state and federal courts by demonstrating "recognition of the fact that the entire country is made up of a Union of separate state governments, and . . . the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.*

At first, the Doctrine applied only to criminal proceedings; "in the typical *Younger* situation, a defendant who [was] being prosecuted in state court under a

constitutionally suspect statute [could not] go running into federal court seeking an adjudication of his rights and/or an injunction halting the pending criminal prosecution." *Parker v. Turner*, 626 F.2d 1, 3 (6th Cir. 1980). But the Supreme Court has since expanded coverage to civil cases where "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10–11 (1987).

The Doctrine triggers when three conditions are met. First, "the state proceeding must be pending on the day the plaintiff sues in federal court—the so-called 'day-of-filing' rule*." Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013) (citing *Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991)). Second, the state must have "a substantial, legitimate interest in the kind of state proceeding at issue." *Nimer*, 707 F.3d at 701 (citing *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans et al.*, 491 U.S. 350, 365 (1989)). And third, the state proceeding must afford "an adequate opportunity for the federal plaintiffs to raise their constitutional claims." *Nimer*, 707 F.3d at 701 (citing *Fed. Express Corp.*, 925 F.2d at 970).

Here, all three *Younger* conditions are met. Indeed, substantial state interests seep through each of Plaintiff's claims—issues that Plaintiff could have and should have raised in New York state court, issues that are inappropriate for this Court to decide.

9

1. *The State Lawsuit's Pendency*

The first condition of the *Younger* Abstention Doctrine is that the state proceeding must be pending on the day that the federal plaintiff files her complaint. Typically this is a cut-and-dried analysis; either the case was pending or it wasn't. Here the determination is not so simple. Plaintiff's complaint reads as if the New York case was pending when she filed this lawsuit:

> 22. Ms. Morrison further seeks an injunction prohibiting the enforcement in any court of any judgment entered against Ms. Morrison in the New York Lawsuit.
>
> - - -
>
> 35. After several motions, attempted discovery at the court's direction, and an interlocutory appeal, from 2013 until now, the New York courts still have not ruled on the merits of Ms. Morrison's jurisdictional and constitutional claims even though they are dispositive to the lawsuit.
>
> - - -
>
> 44. The initiation and continuation of this lawsuit against Ms. Morrison is a continuing due process violation because her forum activities do not satisfy New York state's long arm
>
> - - -
>
> WHEREFORE, Ms. Morrison prays for declaratory judgment and judgment awarding her all damages, fees, and costs for the various violation of her right to procedural due process and a declaration that any judgment forthcoming against her in the New York Lawsuit is void.

It was not until she opposed Defendants' motion to dismiss that she asserted that the New York lawsuit was no longer ongoing as to her. Dkt. 21, Pg. ID 97. But Plaintiff has provided no evidence of her dismissal, only her attorney's statements. And even those statements are ambiguous as to whether the New York case is over for Plaintiff; at oral argument Plaintiff's attorney represented that the docket included both an entered order of dismissal and a subsequent entry suggesting that

the order of dismissal was a mistake. Plaintiff's attorney then said that it was her "position" that Plaintiff was no longer a party to the New York case.

Such representations, without evidence to support them, are insufficient to overcome the complaint's allegation that the New York case as ongoing as to Plaintiff. Plaintiff has produced neither the docket report for the New York case nor the order Plaintiff claims dismissed her from that case.[2] Therefore, because Plaintiff drafted her complaint as if the New York case was ongoing, and because she has not shown otherwise, the Court finds this condition met.[3]

2. *The State's Substantial Interest*

Plaintiff's claims divide into two groups: her declaratory judgment claim and her § 1983 claims. Each group involves different state interests, and therefore requires a separate analysis.

a. *Declaratory Judgment Claims*

"States have important interests in administering certain aspects of their judicial systems." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12–13 (1987). For the same reasons that the fourth factor of the declaratory judgment analysis favors dismissal of that

---

[2] And even if she had, if that docket also contained a later entry suggesting the order was a mistake, the Court still would be unable to find with certainty that the case was terminated as to Plaintiff. Indeed, this decision—interpreting a state court's docket in order to declare whether that court had dismissed a party from the suit—is arguably one this Court should abstain from making under the teachings of *Younger*.

[3] The Court also called the New York court, and the clerk for Acting Justice Joseph W. Latham represented that Plaintiff was still in the New York case. Rather than coming to court with allegations and a "position" unsubstantiated by evidence, Plaintiff's counsel should have confirmed the status of the New York case by telephone call or other means.

11

claim, the Court concludes that New York has a substantial state interest at play with this claim, and it is subject to *Younger* abstention.

### b. § 1983 Claims

Plaintiff seeks to hold Defendants liable both for due process violations and for abuse of process. Plaintiff predicates these claims on the existence of the New York lawsuit. In essence, Plaintiff argues that the very existence of the New York lawsuit violates her due process rights and is an abuse of process because that court has no jurisdiction over her. If Plaintiff succeeded on the merits of these claims, this Court would be ruling on the legitimacy of the New York lawsuit.

New York has a substantial interest in its courts adjudicating cases without a federal district court in another state intervening to declare that a particular case is illegitimate, and that its prosecution violates due process *as defined by the New York Constitution* and is an abuse of process. The courts of New York should decide such questions.

### 3. *Plaintiff's Opportunity to Raise her Claims*

Plaintiff had the opportunity to raise these claims. New York's procedural rules on counterclaims provide:

- **(a)** Subject of counterclaims. A counterclaim may be any cause of action in favor of one or more defendants . . . against one or more plaintiffs
- **(d)** Cause of action in counterclaim or cross-claim deemed in complaint. A cause of action contained in a counterclaim or a cross-claim shall be treated, as far as practicable, as if it were contained in a complaint, except that separate process, trial or judgment may not be had unless the court so orders. . . .

NY CPLR § 3019 (2015). Plaintiff therefore had the opportunity to raise her claims as counterclaims in the New York lawsuit.

It is true that Plaintiff could not have brought her first cause of action as a counterclaim in New York state court because she would have been seeking a "declaratory judgment pursuant to a federal statute that governs declaratory judgment claims commenced in federal court" that would have "no applicability" in state court. *Zylon Corp. v. Medtronic, Inc.*, 2015 NY Slip Op 30610(U), ¶ 26 (Sup. Ct.). But she could have brought the New York equivalent. *See* NY CPLR § 3001 (2015) ("The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed"). And Plaintiff could have brought both of her § 1983 claims. *See, e.g., Town of Orangetown v. Magee*, 88 N.Y.2d 41, 53 (App. Div. 1996) (permitting § 1983 claim for alleged due process violation to continue). *Rodrigues v. City of N.Y.*, 602 N.Y.S.2d 337, 341 (App. Div. 1993) (permitting § 1983 claim for alleged abuse of process to continue). Thus the third condition is met, meaning the *Younger* Abstention Doctrine applies.

    4. *Whether to Dismiss or Stay*

"A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance." *Coles v. Granville*, 448 F.3d 853, 866 (6th Cir. 2006) (citations omitted). When deciding whether to dismiss the case or to stay it, a court considers whether the federal plaintiff will be able to address her federal claims on the merits in the state case. *Id.*

13

The court also considers whether there will be any statute of limitations issues if the court dismisses the case. *Id.*

Dismissal is appropriate in this case. As noted above, New York courts entertain declaratory judgment and § 1983 causes of action. Nothing prevents Plaintiff from raising those claims as counterclaims in the New York case. And there are no concerns with the statute of limitations. Plaintiff's case is based on the premise that the New York lawsuit violates her due process rights and is an abuse of process. As far as Plaintiff has alleged in her complaint (and has failed to prove otherwise), that case is still ongoing. Thus the limitations period likely has not started to run on her claims, and should the New York courts find that she is barred from raising any of her claims, the responsibility for that result falls on Plaintiff because she delayed bringing her claim in the New York courts and instead brought a lawsuit in federal court.

The Court also finds it important to note that Plaintiff's case—were she allowed to proceed in federal court—would likely be found without merit and nearly worthy of Rule 11 sanctions. For the reasons noted above, her declaratory judgment claim does not merit consideration. And her § 1983 claims fail at both the general and specific levels.

Plaintiff's § 1983 claims fail generally because Defendants are not state actors. Plaintiff alleges that by selling the horses without going through the New York courts, Defendants were state actors. Dkt. 21, Pg. ID 100. The case she cites for that proposition, however, holds that a person who conducts a lien sale without involving

14

the courts is a state actor under the New York Constitution, but expressly refuses to say that the same is true under federal law. *See Sharrock v. Dell Buick-Cadillac, Inc.*, 45 N.Y.2d 152 (1978). Plaintiff has provided no authority to support the finding that, by selling the horses without going to court, Defendants are state actors under federal law.

But there is an even more serious flaw with Plaintiff's claim: whether Defendants sold the horses unlawfully is irrelevant because Plaintiff has no standing to challenge the lien sale. Plaintiff says without reservation that she disclaimed all interest in the horses when she moved from California to Missouri, Dkt. 1, ¶¶ 15-16. Taking this statement as true, Plaintiff suffered no injury when Defendants sold the horses, whether lawfully or not. The injury Plaintiff complains of is having to respond to the lawsuit, not losing the horses as a result of the sale. To state a claim under § 1983 then, Plaintiff would need to allege that Defendants qualify as state actors because they sued her. Section § 1983 does not function like that; if it did, any person who sued another person would be a state actor and could herself be sued for suing.

Plaintiff's § 1983 claims also fail for reasons specific to each claim. As explained above, for her due process claim Plaintiff cannot rely on the lien sale because she has no standing to challenge the sale. The only action of Defendants about which Plaintiff can complain, then, is the filing of the lawsuit. Filing a lawsuit does not deprive the defendant of her due process rights, it invokes the authority of a judicial forum wherein those rights are exercised. And with respect to Plaintiff's abuse of process

claim, the Sixth Circuit has recognized that, in this Circuit, "a federal abuse of process claim does not exist." *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014).

Thus both Count II and Count III are **DISMISSED**.

## IV. CONCLUSION

For the forgoing reasons, Defendant's Motion to Dismiss is **GRANTED**. The case is **DISMISSED**.

**SO ORDERED.**

Dated: October 31, 2016                        s/Terrence G. Berg
                                                          TERRENCE G. BERG
                                                          UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on October 31, 2016, using the CM/ECF system, which will send notification to all parties.

                                                           s/A. Chubb
                                                           Case Manager